Thank you. Good morning, Your Honors. My name is Timothy Clancy. I represent Mr. Corey Moody in this matter. This is an appeal from Judge Davis's order in the Eastern District of Virginia, Newport News Division, whereby he granted Apelli's motions for summary judgment, specifically Apelli's, Hollandsworth, and Gibson. Specifically with regard to Hollandsworth, the court ruled that there was no seizure based upon the undisputed evidence, which we concede her shot did not strike Mr. Moody. Alternatively, he ruled that if there was a seizure, Hollandsworth was entitled to qualified immunity because her use of force was not excessive. And then further, even if found to be a violation, she'd be entitled to qualified immunity because her actions did not violate a clearly established right. He followed the same logic with Gibson. Gibson was not in a situation with Hollandsworth whereby a bullet did not strike Mr. Moody. Clearly, Mr. Gibson's two of the four shots he fired struck Mr. Moody, one of which paralyzed him. Nonetheless, the court ruled there was no unreasonable seizure. Hollandsworth shot, missed, right? Shot. Hollandsworth shot, missed. She fired once in the miss. She did. She fired from the rear of the car. Gibson was to the right side passage of the car, fired three to four shots. The evidence is four shots. Two shots hit Mr. Moody, one of which severed his spine. And despite that, the court ruled that there was no excessive force and also entitled to qualified immunity. Those rulings were made based upon the fact that Judge Davis ruled that summary judgment was appropriate because there were no facts in dispute, no genuine issues of dispute or any material facts. And for that, we would respectfully disagree. With regard to just a very brief summary of the facts that involved or some of the facts we felt that respectfully that Judge Davis perhaps did not consider is the fact that this case actually began in March of 2012 when Officer Hollandsworth arrested Mr. Moody for a narcotics violation. It was a consensual encounter. Mr. Moody was absolutely compliant. As a result of that compliance, he agreed to a search. And on his person, they found a quantity of narcotics. Finding those narcotics, that was in the city of Newport News. Finding those narcotics, they then went to the city of Hampton where he resided, searched his home, found more narcotics. They also found a firearm in his home in a room that was accessible to him. He was charged in both the cities of Newport News and Hampton, respectively, two cities contiguous in the Tidewater area. The cases proceeded for a period of time. Officer Hollandsworth would confirm. He made bond in both jurisdictions. And he also appeared regularly in all court appearances. At some point, the charges in Newport News were null prost. Thereafter, a federal arrest warrant was issued. The federal authorities in the Newport News Division accepted or grabbed, took over the jurisdiction. Was it an indictment or a complaint? It was actually an arrest warrant was issued. Right, but it had to be based on something. It was on an indictment, ultimately, Judge. Well, was he indicted by the federal authorities? Yes. And then a warrant, it was a bench warrant. Yes, yes. It wasn't on a complaint to the magnitude. It was not. They adopted the prosecution. But it was based on the same charge that had been over there in the state court that was not across. I should say both charges. They involved both charges. Newport News had been null prost. Hampton had not been null prost. It simply went from the state court to the federal court. Correct. Same charge. Correct. It is suggested or inferred that Mr. Moody was aware of that. That's not the case. Mr. Moody was aware of that? Was not aware of that. That's a disputed fact, that he was aware that he had been indicted in federal court. He knew the Newport News charges had been null prost. The pending Hampton charges were due to be heard in the next couple of weeks. Nonetheless, as a result of that federal indictment being issued with the warrant, Detectives Hollingsworth and Tinsley were looking for Mr. Moody. They see him or see a car that appears to be one that he's associated with, and they follow the car, not sure that he's in the car, and he's going up a ramp on 35th Street. The question here is whether the firing of the weapon represented excessive force. Whose weapon, Judge? Because there are two separate issues here. Mr. Gibson's. Gibson's. Absolutely. And I think that's the crux of the case. If you had to tell me in one sentence why summary judgment should not have been granted against Mr. Gibson, Officer Gibson, is because there is a genuine material issue at dispute that should be resolved by the fact finder, and that is whether or not Mr. Moody had taken any actions to place that car into gear and drive away at the time Gibson fired the shot. You want the complaint reinstated as to Officer Hollingsworth, too. Well, I would, but Hollingsworth is a completely different issue because I have a third problem. I have a problem with Hollingsworth in the fact that her bullet did not strike Moody. That's a separate issue as to whether a seizure occurred. Right. That's a problem for you, as you say. I concede that that's a problem. I think in order to address it, I want to make it clear that I'll start with Gibson and then I'll get to Hollingsworth. You think you've got a better case on Gibson? Absolutely, sir. Absolutely. And reading the plain facts of this case, I think that should be very apparent. As far as Gibson was concerned, is it undisputed that before Gibson and Hollingsworth shot that they saw Tinsley trying to gain control of the plaintiff's hand? Yes, but they have two different perspectives of that same thing. Hollingsworth's now in the rear of the car. Having gone to the passenger side initially to verify it's Moody, presumably checking the interior of the car. Could Gibson observe a struggle between Tinsley and Moody? All Gibson could say is he saw Tinsley reach in with his arm. At most, he says he was at the threshold of the car. Now, Gibson's… What do you mean at the threshold? Was he half in and half out? No, sir. No, he cannot say that. He says he sees his arm going into the car and he sees Tinsley at the pillar of the car. He was on the driver's side window down on the driver's side. Exactly. Tinsley is on the driver's side window dealing with Moody. Okay. And Moody is under the wheel. Behind the wheel. He's acquiesced to the stop. He's pulled over because these are unmarked cars. He sees the blue lights. They're clearly wearing their police vests. He's pulled over. And he's on the interstate on a ramp or something. Well, yes. It's a ramp and an entrance. Newport News traffic is a little confusing. But it's all… Yes, sir. On a slight incline. What about the brake lights? Well, the brake lights is interesting. The brake lights, according to Hollinsworth and Gibson… Excuse me. Hollinsworth and Norris, they say when they first pulled up, they see the brake lights. Tinsley tells Moody, put your car in park. He does. No brake lights. Then Tinsley… And here's one of the disputes. Tinsley says, give me your hands. Tinsley says, put them on the steering wheel. Moody says, he's told to put them outside the window. And the undisputed evidence is Tinsley attempts to handcuff him while in the car. Moody claims he's trying to pull him out of the car.  Brake light clearly at that point. All right. But if there's a struggle, why would Gibson be unreasonably thinking that his colleague Tinsley was in some danger? Gibson's unequipped… Particularly if he was at the wheel and the car took off. Gibson's unequivocal in saying that the reason he fired a sequence of shots… He fires immediately after Hollinsworth fires. He's unequivocal when he says, I fired this series of shots because I see Moody putting the emergency brake down and beginning to drive away. And he sees Tinsley from his vantage point. He can't say he's inside the car. The last he saw, he was at the pillar, began to slide and fall. And he was concerned about Tinsley. That's Gibson's rationale. The factual dispute here is Mr. Moody has said, equally as unequivocally, I did not take any actions to put that car… But the question is, wasn't that a reasonable perception? But isn't it a fact… It's not necessarily… I mean, you can have a factual dispute, but the question is what an officer reasonably perceived. Judge, I think I can compare what the officer… If that's Detective Gibson's testimony. And respectfully, Mr. Moody says, I did not take any actions to put that car into gear until after I was shot. Did the brake lights illuminate before the shot? According to Officer Hollingsworth, they did. Was that during the struggle with Tinsley? Or was that as a mechanism to put the car into gear? That's a question of fact. But they pulled the car over because the brake lights were so dim they weren't… No, they didn't use the turn signal. They pulled the car over, as I understand, because they didn't use the turn signal to get onto the 35th Street ramp. And I don't challenge the stop. What's troubling here is that the Supreme Court has issued case… This has been in the past two years. It's issued case after case after case, summarily reversing the circuit courts. They don't even get them through arguments. It's just a per curiam reversal because of the fact that we're not applying qualified immunity properly. And they say this is particularly the case in a situation where there's a hazy zone, a borderline zone, between adequate force and excessive force. And they say it's particularly the case where there's a rapidly evolving set of circumstances and officers are forced to act under pressure. And you can see the tone of exasperation in the court's opinions. It says, in the last five years, this court has issued a number of opinions reversing federal courts in qualified immunity cases. And they talk about white versus… This is in white versus parley. And then they go through the things of qualified immunity and says it's got to be established very particularly that this was unreasonable and you have to find a case that particularly put an officer on notice that this would be wrong. He says we talk about Graham, which is an excessive force case, and they do not by themselves create clearly established law outside an obvious case. And, you know, this is… The case books are just legion with, in the past two years, abrupt reversal in an exasperated tone about federal circuit courts not applying qualified immunity where there's no obvious case and where police are forced to react in difficult circumstances. And if somebody fears or there's a reasonable perception that a colleague's life is in danger and they can be dragged down an interstate by a fleeing car, what are they supposed to do? In response, Judge, I fully understand. And I've read your opinions as well on this issue, this eco case. But I would say this. This was a summary judgment motion that was sustained. And there is a factual issue and dispute as between what Gibson observed and what Moody said happened. There is always that factual dispute. But the point the court is making is that in any heated situation, invariably, observations don't completely mesh and coincide. People observe slightly different things. But the point is, according to the Supreme Court, if in the inevitable case that there's a factual dispute, and there always is a factual dispute over something in a heated, quick moment, there's always a factual dispute. And if you send those to trial, the value of the immunity is lost. And the immunity is, and they said the essential component of immunity, is in a case like this not having to go to trial. I understand, Judge. I still maintain I don't think it's enough for a police officer to lay out a set of facts that would justify his use of excessive force and that it was certainly well recognized under a constitutional right or under existing law when there is a dispute as to why he should have or should have fired in the first place. That's a reasonable, objective standard. And if we have a conflict in the testimony between Moody saying, I never did anything to start moving this car until they began to shoot at me, and then I took off. Why were the lights illuminating? Why was he reaching for the floorboard? After struggling with Tinsley, he struggled with Tinsley to try and handcuff him. Why was he struggling with Tinsley? He was resisting getting handcuffs placed on him. Right. Why? Because maybe he wanted to move the car. Maybe he just wanted his hand, he didn't want the handcuffs on him because he wanted his hands free to move the car and guide the steering wheel. They're not just, the two people are not just there exchanging pleasantries. There's a struggle involved. But I don't think respectfully that, I think you need more than just struggling with a police officer trying to put on handcuffs and that would justify Officer Gibson saying, well, maybe he's going to put the car into gear, therefore I better take a preemptive strike and shoot. I mean, I don't think that's what you're saying, but that's the import of what you're saying. I'm saying he didn't want to see a colleague killed and dragged in a fleeing car. The brake lights were illuminating. Didn't the brake lights have to illuminate before the car could be moved out far? Could be placed into gear. Moody says he didn't place his foot on the brake in order to put the car into gear until after he was shot. I understand Hollinsworth says the brake lights had illuminated earlier before her shot, but that could have been during the struggle. Was Gibson supposed to do, wait a minute while I verify all this? No, I think if you accept Gibson's testimony that he saw Moody put the emergency brake down, then I think he'd be justified under everyone's analysis, the Supreme Court's analysis. He saw him reaching for the floorboard, didn't he? No, he was struggling trying to get away from Tinsley. That's all he saw. Why was he working so hard to get away from Tinsley? I think he was avoiding, according to Moody, he didn't want to be pulled out through the window that Tinsley was trying to strike. Was Gibson standing in the rear of the car? No, sir, Gibson was standing perpendicular to Tinsley. He's at the passenger side front window. He's passenger side. Passenger side front window. Hollinsworth is in the back. Hollinsworth is in the back. Rear, rear window. What makes these cases particularly difficult is the fact that we are reviewing some of the judgment. Typically, the evidence is in the light most favorable to the non-moving party. Your client is in that instance. But then when you look at that evidence, we have to make a determination as to whether the actions of the officer were objectively reasonable, which sort of takes it out of the whole light most favorable. But we use that undisputed evidence to come to that conclusion. And the colloquy you're having with my good colleague, Judge Wilkinson, you're going back and forth somewhat. But unless we parcel out that we're not talking about the ultimate conclusion as to whether the actions were reasonable, the question is those underlying facts that support that, are they in dispute? And that's what I see. I'm hearing you going back and forth. I'm trying. In respect to the press, I'm not doing a very good job. That's exactly what I'm trying to say. The underlying facts are in dispute as to whether Moody took any affirmative action. You've got one officer that says he's breaching another. It's another testimony that says I didn't breach. You have a disputed fact. Right. But we've got to look at that disputed fact in the light most favorable, not the ultimate, not look at the one that's in favor. It says, well, what is an officer supposed to do? He's supposed to, if that fact is true, that's exactly what he's supposed to do. But if the other fact is true, that's not what he's supposed to do. That's kind of where we are. Yes, sir, Judge Winn. I think that's exactly right. And I'm sorry if I did not make that clear to you, Judge Wilkinson. Because every case would automatically go to trial, and the Supreme Court has never indicated that. I think the question is, given all the facts, was there a reasonable, it's not a question of was this undisputed or was that. There's always a dispute. The question is whether the officer's perception of alarm and the threat to a that was ensuing, and in light of the fact that the brake lights were on and was the perception reasonable that a colleague was in trouble. These are not situations where you can just pause and wait and watch somebody being dragged down the road. Sometimes you have to act preventively. Yes, sir. And that's why I said if Gibson had seen, their dispute is, I would not challenge Gibson what he did. If he saw Moody doing something to affect the car being placed into gear, i.e., putting the emergency brake down. That's what Gibson says. Moody says he didn't do that. And that's the material fact and dispute that we would like litigated by a trier of fact. Thank you. Thank you. Mr. Kales. Good morning. May it please the court. My name is James Kales. I am here on behalf of Detective Gibson. My colleague and co-counsel, Mr. Rosen, will be speaking on behalf of Detective Hollingsworth. During your exchange with my friend, Mr. Clancy, the court referred to the standard applicable in this case, specifically that officers involved in these exchanges with citizens wear determinations as to the proper use of force. Could you move your microphone down just a little bit? There. That's great. Thank you, Your Honor. I apologize. That's perfect. That's good. Folks, police officers in these circumstances with citizens face tense, uncertain, and rapidly evolving circumstances. See, that's where I'm finding these. When we deal with these cases, our Supreme Court has acknowledged this, because Wilkerson has directly pointed that out in terms of where we go with it. But what makes it difficult, we can go into the policy, everybody in the room, everybody around is going to agree, police officers have a difficult job, the situation is dangerous, they ought to be able to act, that much is good. But if this case turns on in determining whether they acted objectively reasonably, the facts that you use to support that, are they in dispute? If that's the view, or is the view, we just look at the totality of the circumstances. And if the totality of the circumstances are, well, you've got some disputed facts here, you've got some here, but at least we've got this that can support the end result, that muddles the picture. If you do that, you'll never get out of these cases. Every case that you deal with, you can come up with this situation. But my understanding is this is a summary judgment. And at least the underlying facts have to be undisputed. If those facts support the actions of a reasonably objective officer, then he's in objection to the actions of the officers, then he can do those things. I mean, that makes sense. But if they don't, if they're in dispute, then you ought to have a trial and let the jury decide. Well, did he reach down, or did he not reach down? Did he pull the officer in, or did he not pull the officer in? If those are in dispute, but if they're not in dispute, then we have a different situation. I understand, Your Honor. The one thing I would – Exactly. I mean, am I correct in the way I'm looking at this, or is this a totality of the circumstances type of case? Your Honor, I would submit that whether viewed either way – No, I don't want either way. I want to know which way is it. Your Honor, the material facts that are not in dispute have to support a finding of summary judgment. It is that standard. And if the facts are disputed, can you use those to do it? The material facts, Your Honor, cannot be in dispute. I would agree with Your Honor. Just tell us what the material – I'm very interested. Just tell us what the material facts that are not in dispute are. Yes, Your Honor. Mr. Clancy, going up to a certain point, is absolutely correct in his summary. I diverge with him when the police officers begin to approach the vehicle. Detective Gibson, as Mr. Clancy has explained, came up on the passenger side of Mr. Moody's vehicle. His role in that function was to look into the vehicle and have another set of eyes from a different perspective for safety. The facts, as Mr. Gibson saw them, were that he saw at some point Detective Tinsley break the plane, for lack of a better word. I think that's the phrase the district court used in its careful analysis of the facts in this case and parsing through what were material issues of fact and what were not. In breaking the plane, Detective Tinsley had gotten into the vehicle. Detective Gibson saw Mr. Moody pull back and reach down to the right area between the two front seats of the blue BMW which Mr. Moody was operating. He saw Mr. Moody operate the handbrake, the emergency brake, and lower it. I disagree with Mr. Clancy with respect to his summary of facts because at that point there is no dispute that that occurred prior to the shooting. You're saying everything you've said so far is not in dispute. I am saying that, Your Honor. Everything you've said there is not in dispute. Yes, Your Honor. That Mr. Moody reached down for the emergency brake and lowered it prior to any shots having been fired. I would submit that is not in dispute. I believe Mr. Clancy disagrees with a general summary of an approach to Mr. Moody's testimony that captures part of the elements at once. However, Your Honor, what Mr. Moody did in his deposition was not refute that he had dropped the emergency brake prior to the shooting. His specific refuting was that he had not moved the car into drive prior to the shots. Now, leave aside whether or not that's material. Mr. Moody had taken the action of placing the handbrake down. Mr. Gibson saw this. Mr. Gibson gave a command that he stop doing that. Mr. Moody persisted in lowering the handbrake. At that point, Your Honor, that's where the brake lights come into effect. Detective Hollinsworth saw the brake lights flash. Detective Norris saw the brake lights flash. This was a vehicle which Mr. Moody had placed into park at Detective Tinsley's direction before the officers had approached for safety reasons, obviously. Mr. Moody, in his deposition, concedes that his vehicle was one. It was an automatic transmission. It was one where he could not take the car out of park and put it into neutral or into drive without depressing the brake. At page 330 of the joint appendix... When you say depressing the brake, you mean the foot brake? The foot brake, Your Honor. Yes, thank you. I apologize for not making that clear. It was the foot brake. Mr. Moody also concedes that after he was shot, that he could not use his legs. To the extent that there is no evidence that Mr. Moody depressed that brake prior to him being shot, and the undisputed facts that the shots involved, both from Detective Hollinsworth, her first and missing shot, for lack of a better phrase, and then Detective Gibson's shots from the side of the vehicle, which did strike Mr. Moody, the undisputed testimony is that those shots all occurred in rapid succession. We are talking a matter of seconds for all of it. So in analyzing this, Your Honor, we have to take those facts into account and view the record. I know I'm about to sound like I'm having my cake and eating it too, but all of the undisputed facts have to be taken into account to determine the reasonableness of the actions. The undisputed facts which Detective Gibson observed were that Mr. Moody had pulled away from Detective Tinsley, that Mr. Moody had lowered the handbrake, and in terms of Mr. Moody's own testimony, he testified that he had put his foot on the brake and pulled the car out of park. That is in contrast to what Mr. Clancy is describing today, but that is the undisputed record that is before you. He pulled it out of park? He took it out of park, Your Honor. Mr. Moody says that. He would have had to do it as he depressed the brake when he was pulling it down. He doesn't say that. Your Honor? He doesn't say that. Moody doesn't say that. You say that. What Moody says... You say he had to. What Moody says, Your Honor, is that after he was shot, and again, it's a matter of seconds when the shots are occurring, nearly simultaneously, Mr. Moody has to put his foot on the brake and be able to put his foot on the brake to take the vehicle out of park. After Mr. Moody was shot, he concedes that he could not have taken the car and, I'm sorry, depressed the foot brake in order to take the car out of park. Is there a doctor who's testified to that? I mean, does that... He wouldn't have been able to do anything after he was shot? His testimony... That's his testimony. He's not a doctor. I mean, when does his spinal wound take hold 100%? Your Honor, at this particular stage in the proceedings, we hadn't gotten into any medical evidence of the like, particularly given that Mr. Moody himself concedes that he was unable to move his legs after he was shot. That's an undisputed fact which the plaintiff himself concedes. Now, what about the struggle between Tinsley and Moody? Isn't it undisputed that Moody and Tinsley were in a struggle and that Tinsley was, at the same time, he reached down to the emergency brake and release it and lower it. Wasn't he, at the same time, engaged in a struggle with Officer Tinsley to resist handcuffs going on him? Yes, Your Honor. The only question with respect to Detective Tinsley on that is whether his hands initially began outside of the window, as he had been directed by Mr. Moody's testimony, as he had been directed by Detective Tinsley, or whether they were on the steering wheel, as Detective Tinsley testified. That's a distinction without a difference. The district court carefully explained in its opinion on summary judgment why that was not material, and that certainly applies here. Was the emergency brake in the middle of the car at the console? Yes, Your Honor. And it was the one you pull up? Is that the way they worked that? Yes, Your Honor. Now, the material facts that are in dispute, according to the plaintiff's brief, are the location of Detective Tinsley in the vehicle or outside of the vehicle, the instructions given by Detective Tinsley as to whether or not Mr. Moody… Well, he could have been halfway in or halfway out or some proportion of him. It doesn't have to be all or none, in or out, though. Correct, Your Honor. And what Detective Gibson observed and what caused him to believe that Detective Tinsley was in danger of serious injury or death, either by being dragged by the vehicle, being run over by the vehicle, or being crushed against the jersey wall to the passenger side of Mr. Moody's vehicle, was the action of Tinsley going down and full.  because he believed, reasonably perceiving the circumstances as he understood them, again, in rapid succession, that Tinsley was in danger. So he fired to protect Tinsley? He fired to protect Tinsley, yes, Your Honor. And you've written three or four times? Three or four times, yes, Your Honor. You don't know which? They couldn't tell? It would be like they could figure out whether it was three or four. Our record is three. I believe the plaintiff has some question as to whether there were four. In the posture we're in, taking the evidence in the light most favorable to the plaintiff, it doesn't really matter in terms of this particular case. What's the police report say? I believe they account for three bullets that were fired, Your Honor. That's my recollection. And two of them struck him? Yes, Your Honor. That's not contested. And it's not contested that Mr. Moody had serious injuries. The issue involved in this, Your Honor, is whether or not Detective Gibson was reasonable in his perceived understanding of what danger was facing Detective Tinsley, specifically being dragged, being run over, or being crushed against the wall of the Oval Office. To the extent, Your Honor, that qualified immunity applies, the district court had, and we certainly believe it does, we first believe, obviously, that there's not a constitutional violation, as we've articulated in our brief. We also believe that qualified immunity applies and that the plaintiff has failed to demonstrate a specific, clearly established case or precedent that would render Detective Gibson unreasonable in what he believed. One of the things here, you know, I can't stress this too strongly. There is a string of Supreme Court reversals. Yes, Your Honor. The so-called failure of circuit courts to grant qualified immunity. And the reason they're giving is that because these cases unfold so quickly and offices are supposed to make such split-second decisions that you have to have a case, a particular case, not operating at a large generality, but you have to have a particular case that would indicate to the officer that what they did here was beyond the pale and that it was unreasonable. And given what was unfolding so rapidly, you can't expect an officer to stand back and watch a colleague crushed or driven over. Absolutely, Your Honor. And we believe that the case law applies with strong force. The district court determined that the plaintiff had not identified any authority for the prospect that a criminal suspect with an outstanding warrant, where he is resisting arrest when officer observes an indicia of flight, which is what Detective Gibson indicated. Mr. Moody was not putting the emergency brake down to increase the fuel efficiency of the vehicle. Mr. Moody was not putting the brake on to do anything other than to leave. He did not remove the emergency brake to do anything other than to leave. That indicia of flight, Your Honor, there's no case that the district court was able to find or that we were able to find that would indicate a clearly established right for Mr. Moody to engage in the actions he did based on, my time's expired if I may finish my answer, Your Honor. Yes, you may. Thank you, Your Honor. There's no authority in the circuit. There's no authority from the Supreme Court of Virginia. We have found no authority from the Supreme Court of the United States that would recognize the right the plaintiff contends is present here. And recognizing this court's very recent decision in the Booker versus South Carolina case, handed down, I believe, a couple of weeks ago, even looking to consensus of law among other circuits, the district court's opinion clearly lists case after case after case where this kind of circumstance, an officer facing a fleeing suspect in a vehicle was found to have acted reasonably under circumstances which were far less clear than what faced Detective Gibson. Thank you, Your Honor. Thank you. Mr. Rosen, we'd be happy to hear from you. Thank you, Your Honor. Good morning. Jeff Rosen on behalf of Detective Hollingsworth. May it please the court. Plaintiff's excessive force claim fails absent a seizure by Officer Hollingsworth. There was no seizure. Judge Davis correctly concluded that because Officer Hollingsworth's bullet did not strike Mr. Moody, there was no seizure. And the law is clear that no seizure takes place when a plaintiff fails to submit to an officer's show of authority as an officer shoots at the plaintiff and misses. That law is unclear. It is clear on that issue. And we cite the Estate of Rogers case versus Smith and several other cases supporting that proposition. Plaintiff seems to suggest the U.S. versus Black, U.S. versus Brown case does not support our position, but I think their argument is misplaced. Those cases involved suppression of evidence and illegal police stops. That's not the case, certainly, in this circumstance. Even if there was a seizure, Hollingsworth is entitled to qualified immunity, as Judge Davis aptly ruled. And there's no genuine dispute as to the facts regarding Officer Hollingsworth. She did not violate his constitutional rights, and she did not use excessive force, and nor did she violate a clearly established constitutional right. Judge Davis correctly used the Graham factors, analyzed them to determine that there was no violation of the constitutional right. And as the Court has acknowledged, police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. And we take care to consider the facts from the perspective of a reasonable officer on the scene and avoid judging officers' conduct with 20-20 vision or hindsight. That's from the Cooper versus Sheehan case. And Judge Davis found, with regard to Detective Hollingsworth, that the undisputed evidence demonstrates that seconds before Hollingsworth fired her weapon, she observed Tinsley struggling to gain control of Plaintiff's hand. She saw the Plaintiff reach in a direction away from Tinsley and down toward the floorboard of his vehicle. Although Hollingsworth did not see a weapon in Plaintiff's possession, she knew of the Plaintiff's prior gun possession charges. She was involved in the search of his house from the previous arrest. She knew of the drug and weapons... The previous arrest had another gun on his person at the top of the house. Correct. Correct, Judge. But she knew that he was in possession of a weapon in his house or in an area of his house where he had control. She also knew of the drug and weapons charges and feared that the Plaintiff was reaching for a gun to shoot her partner. And that clearly he was in danger of serious harm. In fact, Mr. Moody acknowledges in the deposition that when he was attempting to shift gear to drive off, would have put Officer Tinsley in imminent fear. The Plaintiff admitted that in the deposition. His actions put Officer Tinsley in imminent fear of harm. You know, you've got a very fine district judge here. One of the best. One of the best. And this case is analyzed meticulously. I agree. And looking after, seeing if there is a case that would have put the officers on notice. And not only has there not been a case, there will not be a case that requires an officer to stand by when somebody is struggling, resisting handcuffs, has this kind of record, is releasing the emergency brake, in order to, and lowering the emergency brake and putting on the, illuminating the brake lights, they all add up in an attempt to move. And it, you know, we can, weeks, months, years afterwards, we can try to resurrect it all. But this man had to make a decision involving what I think is a reasonable fear for the life of a colleague in a matter of very few seconds. We agree completely with Your Honor. Anyway, I'll ask my colleagues if they have any questions. Do you have anything further? No, Judge. I think we've summarized the evidence. We would just ask the court to affirm the district court's dismissal of the matter on summary judgment. One question with regard to the application of the factors here. Should we look at the Ghana factors instead of the Graham factors? And should the district court have done that since he used deadly force? Well, no, I think the Graham factors were the appropriate ones to consider under the circumstances. Ghana? No. So it's an interesting point that my colleague raises, because Ghana was a situation where you used deadly force against a fleeing suspect. But the element that was missing in Ghana, there was no question of a colleague's life being put in danger immediately by the flight. Obviously, you just don't shoot at a fleeing suspect. In the battle. Even a fleeing felony suspect, just as disproportionate force. What makes this case, I think, different from a lot of the fleeing suspect cases on foot, and even from the fleeing suspect cases in a car, is that here, this man's life was on the line immediately. Oh, clearly. Another officer. And, you know, human nature being what it is, when you have a colleague that's in harm's way, it's going to matter to you. It just is. Well, clearly under the Garner case, you cannot shoot a fleeing felon when there's no fear of imminent harm. That was the case in Garner. The officer shot the assailant as he was climbing a fence in the back. That's not the situation in this case. What Detective Ponsworth observed was that Mr. Moody turned, and she believed he was reaching for a gun. And that certainly put her, as any reasonable officer, in imminent fear that her partner could be shot. So it's really not a Garner situation. I think the Graham v. Conner was the proper test that Judge Davis used. Thank you. Thank you. We would ask you to apologize for Davis's decision. Mr. Clancy, you have some time for rebuttal, sir. Thank you, Judge. And I certainly don't want to upset the court, but I understand everything you're saying. The posture of this case. You won't ever upset the court by arguing. This is your job. I'd rather you upset me than upset your client. Well, these guys know I'm not that shy, Judge. You will upset us if you don't argue vigorously. Thank you. Here is the issue. We are here on a summary judgment motion. All facts are to be regarded in favor of the appellant, Mr. Moody. Mr. Moody says he does not. He says, On more than one occasion, I took no efforts to put this car into drive until after the shots. Mr. Kales says, Well, we can look at the shots and the fact he's paralyzed, and that's repso facto that he couldn't have done this. How much time was there between the shot fired by Hollingsworth and the first shot fired by Gibson? They were very close in time. I know they're very close in time. You're entitled to whatever the best look at it, too, but does anybody say five seconds or ten seconds or twenty seconds? We know Hollingsworth was first, and Gibson says he hears that shot prior to him firing his shot, and then after that he fired it. We know it was prior. Yes, sir, and he fires in rapid succession. Momentarily. Yes, sir. I can't say it's more than a second. It's not seconds. It's quick. It's very quick. So we don't know. We don't know. We know that she fired first. We do know that she fired first, and I've conceded that her bullet did not strike Moody, but I've not conceded that Gibson's first bullet struck Moody or the second bullet may have struck Moody but was not the bullet that paralyzed him. If there were four shots, you say there were four shots, then you're saying that the first two fired by Gibson could have missed Moody. More importantly, I'm not saying that needed something more. There's two bullets that struck him. I'm saying the bullet that struck him and severed his spine that caused him not to be able to use his legs could not have been the first or the second bullet because he was able to get the car with his foot on the brake pedal and get the car into neutral. Then after that, he said he slid it into drive. Didn't need to put your foot in the brake on that point. Since you don't know, you claim you're entitled to the best view of it and it would be the last bullet. Of course. All our inferences are to be drawn in our favor. That's what I'm good at. You're helping me. I know. Thank you, Judge. I'm just trying to understand. But I absolutely understand if I only considered Officer Gibson's vantage point and what he testified to and accepted those facts as undisputed. I understand, Judge Wilkerson, and I understand what the U.S. Supreme Court has said. All I'm asking respectfully is that there is a dispute about the sequence about when Moody found it prudent and appropriate to try and take efforts to put that car into gear and get away and he says it was after the first shot. That's what he says. That's the evidence, and that's why I respectfully disagree with Judge Davis, whom I absolutely agree is a great district court judge, but that's the error and that's what we're hanging our hat on on this appeal. Are you saying it's undisputed that Moody did not take any of these actions before the shot? I'm saying Moody testified he did not take. I'm not saying he didn't struggle with Tinsley. I'm not saying he didn't pull to the side. I am saying that Corey Moody never said he dropped the emergency brake, put his foot on the brake, changed the car from park into neutral before any shots were fired. He says he did all of that after the shots were fired. Did he say he had taken no other type of action to struggle or to debate before the shots? No, sir. He admits he struggled with Officer Tinsley. He said Tinsley was trying to pull him through the window. He hears somebody on the passenger side. He never asked about whether he lowers the emergency brake. He says on repeated occasions, I took no steps to put the car into drive until after I was shot. But the emergency brake, if I'm understanding what you just said, you're saying he didn't talk about that. He didn't say anything about the emergency brake. He did not. He was asked repeatedly when. I heard testimony from the officers saying he did. He did. He doesn't refute it. He was never asked about it. I guess in the order of proofing the deposition. But that's not disputed is what I'm saying. That is not disputed. That is disputed because Moody says a very broad statement. He says I took no efforts to put the car into drive until after the shots were fired. Yeah, but I'm talking specifically about the emergency brake. He was not asked specifically about the emergency brake, Judge. I'm relying exclusively on the fact of what he says. He's asked repeatedly about that and he says, and it was your intent to put the car in drive and drive away? Yes. After I heard the gunshots. Yes, sir. That's what he says. He says it on more than one occasion. There's a statement that he reached out to put the emergency brake on, and he's not asked. No one ever says anything to him to refute it. That fact is not disputed. Other than the. Deposition. Well, other than the fact that he says he took no efforts to put the car into gear until after the shots. That would. Not inconsistent. Not inconsistent to put the car in gear and put it in gear and say I didn't do it for the having nothing said about the emergency brakes. I guess, Judge Winn, I would respectfully disagree because you can't put the car into gear and drive unless the emergency brake was up. You've got to be able to lower it. So when he says I took no efforts to put the car into drive and drive away until after the shots. Was there any evidence about whether that emergency brake could be knocked loose? If he fell on it, that that could knock it loose? No evidence at all about that, Judge. Now, Mr. Clancy, I've listened very carefully to your argument, particularly to your rebuttal. And during the entirety of it, you have not identified one case that would put Officer Gibson on notice if what he did was wrong. The Supreme Court has subjected circuit courts to per curiam reversals. They are exasperated. Read the tone of those opinions. You have to have a case that particularly, not generally, but that particularly put the officer in question on notice that the actions taken were unlawful. And it is striking that during your argument, and particularly during your rebuttal, there was not a single case that you cited. And that's what the Supreme Court says you need. And if there was a case, it would have come up without my prompting. I know you're going to say something, but just generally another excessive force case just won't do it. And that is the problem. Your time has run out. You gave us no case. Yes, sir. I have argued a factual issue, a factual dispute. If that factual dispute is resolved in the favor of Officer Gibson, then you are correct. I'm asking for the opportunity to litigate that factual dispute. Puts the cart before the horse. You've got to identify a case for summary judgment. At any rate, we've chewed the bone, as they say. Yes, sir. Thank you. We will come down and greet counsel.
judges: J. Harvie Wilkinson III, Robert B. King, James A. Wynn, Jr.